CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

OCT 15 2008

JOHN F. CORCORAN, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCUS NIKITA JENNINGS,<br>                                       *Defendant.* | CRIMINAL NO. 6:06CR00004<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the Defendant's Motion to Suppress, filed on August 13, 2008 (docket no. 22). Defendant moves to suppress any physical evidence seized from his person on July 13, 2005 on the ground that law enforcement officers violated the Fourth Amendment to the U.S. Constitution in detaining, arresting, and searching him without a warrant. For the following reasons, the Defendant's motion will be DENIED.

## I.    BACKGROUND

On July 13, 2005, three officers from the Appomattox County Sheriff's Office conducted a surveillance of a residence where it was believed that Alex Hamlette was to sell approximately a quarter ounce of crack cocaine to undercover agents. At the time the surveillance was set up, the Drug Enforcement Administration ("DEA") Task Force of the Eastern District of Virginia had already conducted several hand-to-hand purchases of crack cocaine from Hamlette in Prince Edward County, Virginia. The Farmville, Virginia Police Department also had an outstanding felony warrant for Hamlette's arrest. According to the testimony of Sergeant Andy Ellington of the Farmville Police Department's Narcotics Units and the DEA Task Force, the officers conducting the surveillance were "98% sure" that one of four individuals who exited the residence and entered a blue Buick vehicle was Hamlette. The officers conducting the

surveillance notified the Farmville Police Department and the Appomattox County Sheriff's Office of the description of the vehicle that they suspected Hamlette to be riding inside.

Subsequently, Deputy David O'Brien of the Appomattox County Sheriff's Office identified a vehicle fitting the above description. O'Brien had previous dealings with Hamlette and was aware of his general appearance, but because of the dark tinting of the windows of the vehicle, he could not determine if Hamlette was inside. O'Brien stopped the vehicle on the suspicion that Hamlette was inside and that the darkness of the window tinting was illegal.

Shortly after the stop, Sergeant Ellington arrived on the scene. O'Brien identified Hamlette as one of the back seat passengers, ordered him out of the vehicle, and placed him under arrest. The driver and the other two passengers, including Defendant, were subsequently ordered out of the vehicle as well. Defendant was the front seat passenger. As Defendant stepped out of the front seat, Sergeant Ellington noticed a black pair of digital scales at Defendant's feet with a form of white, flakey residue suggesting the appearance of cocaine powder. At that time, Ellington advised Defendant that he was going to conduct a pat-down to make sure that he was not holding any weapons on his person. During the pat-down, Ellington felt a bulge in Defendant's crotch area and discovered a plastic baggy with a hard substance in it. When questioned, Defendant admitted that the substance in the baggy was crack cocaine. Ellington placed Defendant under arrest. Subsequent laboratory tests revealed that the baggy contained 6.1 grams of cocaine base.

Defendant filed a Motion to Suppress the evidence of the baggy of cocaine base, and a hearing on the issue was held before this Court on September 2, 2008. At the hearing, the Government argued that the initial stop of the vehicle by Deputy O'Brien was justified by a reasonable suspicion that Hamlette was inside the vehicle and that the tint of the windows was illegal. Furthermore, the Government argued that the scales, which were located below

2

Defendant's feet, created a reasonable suspicion justifying the need to pat-down everyone inside the vehicle for contraband. The Government also argued that the fact that the officers were familiar with Hamlette and knew he carried weapons in the past was another supporting factor that justified a pat-down of all the passengers in the vehicle. In support of the Motion, Defendant argued that the stop was not justified on the basis of Hamlette's suspected presence in the vehicle. Testimony at the hearing revealed that Sergeant Ellington filled out a report concerning Hamlette's arrest, which Defendant believed was not provided with other discovery materials by the Government. Because Ellington's testimony about the pat-down conflicted with the testimony of the driver and another passenger in the vehicle, Defendant believed that the report would be crucial to determining whether Ellington's testimony was credible. Consequently, Defendant asked the Court to reserve judgment on this Motion until the report was provided by the Government. At the hearing, Defendant conceded that if the Court were to determine that Ellington was telling the truth (i.e. his testimony was consistent with the information in the report), then the pat-down was valid. The Court reserved judgment on the Motion and permitted Defendant to enter a conditional guilty plea. After the hearing, it was revealed that the report Defendant requested was no different than a report Defendant had already received during the regular discovery period.

## II. DISCUSSION

### A. The Initial Stop of the Vehicle Did Not Violate the Fourth Amendment

A vehicle stop is permitted upon reasonable and articulable suspicion of unlawful conduct. *United States v. Arvizu*, 534 U.S. 266, 273-75 (2002). Whether reasonable suspicion exists depends on the totality of the circumstances, including the information known to the officer and reasonable inferences to be drawn at the time of the stop. *Id.* at 273. While reasonable suspicion consists of more than a "mere hunch," it need not rise to the level of probable cause

3

and falls considerably short of the preponderance of the evidence standard. *Id.* at 274 (citations omitted).

At the time of the stop, there was an outstanding felony warrant for Hamlette's arrest. Officers with the Appomattox Sheriff's Office were "98% sure" that they saw Hamlette exit the residence they were conducting surveillance of and enter a blue Buick, and Hamlette was in the midst of an arranged sale of crack cocaine to undercover agents. Deputy O'Brien acted on the identifying description of the Buick, provided to him by the Sheriff's Office, when he stopped the vehicle. Based on all of these circumstances, O'Brien certainly acted on more than a "mere hunch" that Hamlette was inside the vehicle he stopped. The description of the vehicle and the other officers' near-certain conclusion that Hamlette was inside amounted to reasonable suspicion justifying O'Brien's stop of the vehicle.

Furthermore, it is well-established that a police officer may stop an automobile with darkly-tinted windows without running afoul of the Fourth Amendment on a suspicion that the automobile violates Virginia Code Section 46.2-1052, which makes it unlawful for any person "to operate any motor vehicle on a highway with…colored or tinted film…on the windshield, front or rear side windows, or rear windows of such motor vehicle," unless the tinting film "reduce[s] the total light transmittance of such window to less than thirty-five percent." *See, e.g., United States v. Johnson*, 135 Fed. Appx. 607, 608 (4th Cir. 2005) (unpublished opinion); *United States v. Stewart*, 42 Fed. Appx. 643, 643 (4th Cir. 2002) (unpublished opinion); *United States v. Stewart*, 149 F. Supp. 2d 236, 240 (E.D. Va. 2001). Regardless of whether the windows were so tinted as to reduce the light transmittance to less than thirty-five percent, Deputy O'Brien acted on specific, articulable facts when he stopped the vehicle in which Defendant and Hamlette were passengers. Not only was the stop justified by a reasonable suspicion that Hamlette, for whom an outstanding felony arrest warrant was issued, was inside, it was also justified by a reasonable

- - 
4

suspicion that the windows of the vehicle violated Virginia law. Deputy O'Brien's initial stop of the vehicle did not violate Defendant's Fourth Amendment rights under the U.S. Constitution.

### B. The Pat-Down of Defendant and Subsequent Seizure of the Cocaine Baggy Did Not Violate the Fourth Amendment

A passenger may be required to exit a vehicle during a routine traffic stop, even without reasonable suspicion that the passenger poses a safety risk. If there is reasonable suspicion that the passenger is armed or engaged in criminal activity, then a *Terry* frisk is also permitted. *United States v. Sakyi*, 160 F.3d 164, 168-69 (4th Cir. 1998); *United States v. Raymond*, 152 F.3d 309, 312 (4th Cir. 1998). Furthermore, under the "plain feel doctrine," contraband discovered during a *Terry* frisk may be seized if its "contour or mass makes its identity [as contraband] immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 373-75 (1993); *United States v. Raymond*, 152 F.3d 309, 312-13 (4th Cir. 1998).

Under the above framework, the pat-down and frisk of Defendant at the traffic stop was justified by a reasonable suspicion that he was armed or engaged in criminal activity. For one, Defendant was in a vehicle with Hamlette, who had an outstanding felony warrant issued for his arrest and was known to the police to have been armed on past occasions. Second, Sergeant Ellington identified from plain view a black pair of digital scales with the appearance of cocaine base residue at Defendant's feet. The scales are commonly used in the drug trade to weigh amounts of cocaine in grams, supporting Ellington's conclusion that there was reasonable suspicion that Defendant was engaged in criminal activity. Under the plain feel doctrine, Ellington's seizure of the cocaine baggy from Defendant's person was justified because its mass and hard contour, combined with its presence in Defendant's crotch area, made it immediately apparent to Ellington that the item he felt was contraband. Furthermore, Ellington's testimony concerning the circumstances of the pat-down was consistent with the police reports that were

5

provided to Defendant. The pat-down of Defendant and the seizure of the baggy of cocaine base did not run afoul of the Fourth Amendment.

### C. The Seizure of the Scales Did Not Violate the Fourth Amendment

Under the "plain-view doctrine," the viewing of an article already in plain view by a law enforcement officer does not involve an invasion of privacy, and consequently does not constitute a search implicating the Fourth Amendment. *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997). The doctrine applies when an officer is lawfully in a position from which an article can be plainly viewed, the officer has a lawful right of access to the article, and the article's incriminating character is immediately apparent. *Id.* at 1109.

Sergeant Ellington's viewing and subsequent seizure of the digital scales below Defendant's feet was justified under the plain-view doctrine. Ellington was in a lawful position alongside the vehicle when he noticed the scales below Defendant's feet. As part of the traffic stop, Ellington had a lawful right of access to the scales. It was immediately apparent that the scales, combined with the white residue, were a form of contraband because they are commonly used for weighing cocaine in gram denominations. Consequently, the seizure of the scales did not violate the Fourth Amendment.

### III. CONCLUSION

The initial stop of the vehicle by Deputy O'Brien was justified by a reasonable suspicion that Hamlette was inside and that the tinting of the windows was illegal. The subsequent pat-down of Defendant and seizure of evidence was also justified under the circumstances and did not run afoul of the Fourth Amendment. Accordingly, Defendant's Motion to suppress the evidence should be DENIED.

It is so ORDERED.

6

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to Defendant.

Entered this 15th day of October, 2008.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE